**STEPTOE LLP**
RYAN M. LAPINE (SBN 239316)
rlapine@steptoe.com
633 West Fifth Street, Suite 1900
Los Angeles, California 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

Attorneys for Plaintiff
  ROBERT N. DANIELS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

ROBERT N. DANIELS,

        Plaintiff,

        v.

SPECIALIZED LOAN SERVICING, LLC, a Delaware Limited Liability Company, U.S. BANK, NATIONAL ASSOCIATION, as trustee for Chevy Chase Bank Funding LLC Mortgage Backed Certificate Series 2007-1, and Does 1-10,

        Defendants.

) Case No. 2:22-cv-06776-MCS-PD
)
) District Judge:  Hon. Mark C. Scarsi
) Magistrate Judge: Patricia Donahue
)
) **PLAINTIFF'S MOTION *IN LIMINE* NO. 3 TO EXCLUDE ALL TESTIMONY, OPINION, AND EVIDENCE FROM UNDISCLOSED WITNESSES, INCLUDING WITHOUT LIMITATION DEFENDANT SPECIALIZED LOAN SERVICING, LLC'S AGENTS AND EMPLOYEES**
)
) [*Declaration of Ryan Lapine and (Proposed) Order filed concurrently herewith*]
)
) **Final Pretrial Conference**
) Date: April 14, 2025
) Time:
) Courtroom: 7C

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on April 14, 2025, at 2:00 p.m. or as soon thereafter as this matter may be heard, in Courtroom 7C of this Court, located at 350 W. 1st Street, Los Angeles, CA 90012, Plaintiff Robert N. Daniels ("Plaintiff") or ("Daniels") will move this Court *in limine* for an order excluding testimony, argument, and evidence from undisclosed witnesses.

Plaintiff brings this motion under Federal Rules of Civil Procedure 26 and 37 on the grounds that a party may not call witnesses who were never disclosed before trial. Defendant Specialized Loan Servicing, LLC ("SLS") intends to call a witness to testify on behalf of SLS at trial, and that witness's identity remains unknown to Plaintiff as of this filing. SLS already designated a Rule 30(b)(6) witness who testified at deposition on its behalf regarding all categories of discoverable information listed in its Rule 26(a) disclosures. If SLS is permitted to call a new corporate representative as witness at trial, that will result in a trial-by-ambush. Further, if that witness takes positions inconsistent with or wholly contradictory to its Rule 30(b)(6) witness, impeachment will be insufficient to rectify the resulting prejudice.

This motion is made upon this Notice, the attached Memorandum of Points and Authorities, and exhibits thereto, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

## LOCAL RULE 7-3 CERTIFICATION

This motion is made following the conference of counsel pursuant to L.R. 7-3 and L.R. 16 held on March 12, 2025, and continuing on March 14, 2025. (Declaration of Ryan Lapine ("Lapine Decl.") ¶ 11.)

PLAINTIFF'S MOTION *IN LIMINE* NO. 3 RE: UNDISCLOSED WITNESSES
CASE NO: 2:22-CV-06776-MCS-PD

Dated: March 24, 2025                    **STEPTOE LLP**


By:  */s/  Ryan M. Lapine*
            Ryan M. Lapine

Attorneys for Plaintiff
    ROBERT N. DANIELS

## I.     **INTRODUCTION**

Under Rule 26(a), a party is required to disclose "the name and, *if known*, the address and telephone number" of each witness likely to have discoverable information that may be used to support the party's claims or defenses.  Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added).  Defendant Specialized Loan Servicing, LLC ("SLS") violated this requirement by failing to provide the names of any of its witnesses in its Amended Rule 26(a) Disclosures, instead only providing the entity and the discoverable information the unidentified witness may have.  (Lapine Decl. ¶ 9, Ex. 8, at 2 (Amended Rule 26(a) Disclosures).

Plaintiff noticed the deposition of SLS and listed matters for examination that encompassed all categories of discoverable information listed on SLS's Rule 26(a) disclosures. (*Compare id.* ¶ 6, Ex. 5 with *id.* ¶ 9, Ex. 8, at 2.) SLS designated Laura Ollier as its 30(b)(6) witness for all matters set out in the deposition notice, and Plaintiff elicited positions from Ms. Ollier on each of those matters, which included SLS's practices and policies and SLS's actual conduct in handling Daniels' payment and communications. (*Id.*; *see generally id.* ¶ 7, Ex. 6.) Ms. Ollier, on behalf of SLS, for example testified that SLS failed to send monthly loan statements, delinquency notices, and an annual escrow analysis to Daniels, while admitting that Daniels had no other method of obtaining this information. (*Id.* ¶ 7, Ex. 6, at 20:1-22:22, 31:23-33:20, 75:24-76:4, 77:4-10.)

Despite having produced Ms. Ollier for deposition and never having disclosed additional persons likely to have discoverable information, SLS submitted the declaration of an SLS employee, never before disclosed, in support of its summary judgment papers, Katisha Gill. (*Id.* ¶ 10, Ex. 9, ECF No. 152-2.)  Further, during pre-trial conference of counsel, SLS's counsel represented that Ms. Ollier was no longer employed by SLS and living beyond the reach of a trial subpoena, so SLS intended to offer testimony from a new corporate representative at trial. (*Id.* ¶ 11.) As of this filing, Plaintiff still does not know the identity of SLS's never-before-disclosed

corporate representative, or what matters that representative will testify to at trial. SLS should not be permitted to call this witness at trial for the following reasons:

First, Plaintiff already deposed the person identified in SLS's Rule 26(a) disclosures—the unnamed individual who would have knowledge of the subjects of discoverable information was Ms. Ollier, as she confirmed during her deposition. For SLS to call a new witness at trial to testify on those same subjects where it failed to identify that witness *at all* would be severely prejudicial and effectively cause a trial-by-ambush for Plaintiff. Certainly, if Daniels knew the identity of the witness SLS intended to call at trial in its own defense, he would have deposed that witness, taken follow-up discovery if necessary based on that testimony, and put himself in position to effectively cross examine that witness at trial. That is the very purpose of Rule 26(a). There is no justification for SLS to have withheld the identity of fact witnesses in its employ until pre-trial meeting and conferring.

Indeed, Ms. Ollier evidently ended her employ with SLS in June of 2024, well in advance of summary judgment briefing.  SLS sat on this fact until March of 2025, ambushing Plaintiff with it and its desire to call a different, undisclosed witness to clean up Ms. Ollier's testimony on the eve of trial.   To the extent it wished to call a different witness on its behalf at trial, I had more than nine months to amend its Rule 26 disclosures and identify that witness so that Plaintiff could take timely discovery and avoid the prejudice of a trial by ambush.  It still has not done so.

Second, Ms. Ollier has already taken multiple positions on behalf of SLS under oath. (*Id.* ¶ 7, Ex. 6, at 6:17-7:18, 20:1-22:22, 31:23-33:20, 75:24-76:4, 77:4-10.) Though Plaintiff anticipates that SLS will argue impeachment is the appropriate remedy in the event its never-before-disclosed witness takes positions that are inconsistent with or wholly contradictory to Ms. Ollier's deposition testimony, that will not rectify the harm. To effectively impeach a corporate representative using video deposition testimony of an entirely different person requires that jurors fully comprehend the abstract concept that both persons are testifying on behalf of SLS

- 5 -

and, for purposes of this case, are the same entity. In other words, that creates a significant danger of confusing the issues, misleading the jury, and unfairly prejudicing Plaintiff. *See* Fed. R. Evid. 403. If the Court permits SLS to call a new, never before disclosed witness at trial on those same subjects, SLS should be judicially estopped from eliciting any testimony that contradicts the positions already taken by Ms. Ollier, SLS's 30(b)(6) witness.

## II.  FACTUAL BACKGROUND

### A.  SLS Produced Ms. Ollier as its Rule 30(b)(6) Witness on all Subjects Disclosed in SLS's Rule 26(a) Disclosures.

In its most recent Amended Rule 26(a) disclosures, dated November 4, 2024, SLS disclosed a *category* of individuals associated with SLS who was likely to have discoverable information. (Lapine Decl. ¶ 9, Ex. 8, at 2.) SLS listed "SLS person(s) most knowledgeable," who would have likely have discoverable information on the following subjects:

> "Daniels' payments to SLS, manner of Daniels' payments to SLS, communications with Daniels, escrow matters, mailing issues, on-going delinquency of loan and loan history, coding of accounts with Wells Fargo Bank, N.A. for EBOX payments and impact on acceptance or rejection of EBOX payments from borrowers in general and from Daniels, collection of tax payments in escrow account from Daniels, confirmation that no insurance payments have been collected/charged on Daniels' account."

(*Id.*) Those disclosures were unchanged from SLS's initial disclosures, on which Plaintiff relied to notice the deposition of SLS on an extensive list of topics that encompassed the entirety of SLS's disclosed subjects. (*Id.* ¶ 6, Ex. 5, at 3.)

On February 23, 2024, SLS produced Ms. Ollier as its Rule 30(b)(6) witness, and she confirmed that she understood her testimony was binding on SLS. (*Id.* ¶ 7, Ex. 6, at 7:7-18.)

PLAINTIFF'S MOTION *IN LIMINE* NO. 3 RE: UNDISCLOSED WITNESSES
CASE NO: 2:22-CV-06776-MCS-PD

### B.   Ms. Ollier Testified on All Subjects Disclosed in SLS's Rule 26(a) Disclosures.

Ms. Ollier testified regarding Daniels' payments to SLS (Lapine Decl. ¶ 7, Ex. 6, at ), communications with Daniels (*id.* at 19:6-13, 20:1-22:22, 24:19-25:2, 25:22-25, 28:10-15, 77:7-10), escrow matters and collection of tax payments in escrow (*id.* at 22:9-22, 75:24-76:11, 77:4-10, 72:8-18), mailing issues (*id.* at 24:19-22, 26:11-16, 26:23-27:2, 27:19-23, 188:24-190:10), delinquency of Daniels' loan and loan history (*id.* at 20:1-22:22, 31:23-33:20), coding of accounts with Wells Fargo for EBOX payments (*id.* at 171:25-173:7), and insurance payments on Daniels' account (*id.* at 13:12-25, 75:4-13).

### C.   Ms. Ollier Asserted Positions that Bind SLS on Key Disputed Issues in this Case.

In addition to testifying on all subjects in SLS's Rule 26(a) disclosures, Ms. Ollier confirmed that she was SLS's person most knowledgeable on topics 1 through 8 in the deposition notice. (*Id.* at 8:11-9:6.) Those topics covered material factual disputes in this case. First, Ms. Ollier admitted that it is SLS's "responsibility" to provide borrowers monthly statements indicating if there are changes in the monthly payment amount:

Q. Are you aware of any regulations that require a mortgage service provider to send notices to borrowers regarding changes to their monthly payment amount?

A. Yes, there are.

(*Id.* at 20:5-9.)

Q. You're supposed to do what?

A. We're -- we are -- we do communicate with borrowers about their changes in their payment.

Q. And it's SLS's responsibility to communicate that to borrowers?

A. It is.

- 7 -

(*Id.* at 20:14-20.)

Ms. Ollier testified that Daniels could only know what was owed, how his funds were being applied, and if he failed to make a payment in full from SLS's monthly statements. (*Id.* at 22:19-22, 29:15-20, 31:6-11, 76:5-11.) If there were payment issues regarding these monthly statements, SLS sent delinquency notices, or "breach letters," to borrowers to give them time to cure. (*Id.* at 32:14-33:5.) Yet, despite SLS's "responsibility" to communicate payment changes to borrowers, Ms. Ollier testified that she was not aware whether SLS had sent Daniels any breach letters in 2018 and was unsure whether it had done so in 2022. (*Id.* at 33:9-11, 33:25-34:2.) But from 2019 to 2021, SLS had failed to send breach letters to Daniels:

Q Did SLS send Mr. Daniels any breach letters in 2019?

A I don't believe so.

(*Id.* at 33:12-14.)

Q Did Mr. Daniels send -- did SLS send Mr. Daniels any breach letters in 2020?

A For the times that he was in litigation, I don't believe they sent those communications.

Q So did SLS send Mr. Daniels any breach letters in 2020?

A I don't believe so, no.

(*Id.* at 33:15-21.)

Q And did SLS send Mr. Daniels any breach letters in 2021?

A I don't believe so.

(*Id.* at 33:22-24.)

Similarly, the loan file should reflect if SLS sent an annual escrow analysis. (*Id.* at 75:24-76:11, 77:4-10.)   Ms. Ollier testified that if there was a surplus of escrow money in an escrow account, the borrower would be notified through a yearly escrow analysis sent by SLS, which were not sent to Daniels.  (*Id.* at 72:8-18.)

PLAINTIFF'S MOTION *IN LIMINE* NO. 3 RE: UNDISCLOSED WITNESSES
CASE NO: 2:22-CV-06776-MCS-PD

Q. First of all, at any point from 2018 to 2023 did SLS account to Daniels for excess funds held in the escrow?

A. Yes.

Q. How?

A. Through our annual escrow analysis.

(*Id.* at 75:24-76:4.)

Ms. Ollier testified that, from 2018 on, SLS was only maintaining escrow for the purposes of taxes. (*Id.* at 75:4-13.) Although Ms. Ollier recognized that Plaintiff's property taxes were $21,900 in 2022 and $22,216.32 in 2023, she admitted that SLS was holding $39,487.69 in escrow to cover those taxes. (*Id.* at 79:20-80:1; 80:22-25.) Ms. Ollier confirmed the basic math that there was no escrow shortage at that point in time. (*Id.* at 81:8-10.) However, she could not explain why SLS's accounting required a line item for "negative escrow balance" of $5,055.14 to reinstate Plaintiff's loan. (*Id.* at 81:11-83:13.)

Ms. Ollier testified that SLS was required to notify a borrower if it institutes foreclosure proceedings in California. (*Id.* at 183:23-184:7.) She admitted that SLS gave notice to Plaintiff that it was instituting foreclosure proceedings on Plaintiff's property on November 15, 2023, and then falsely certified on December 11, 2023 that 30 days had passed since it attempted to contact Plaintiff before filing a notice of default and foreclosure, and thus it had complied with complied with California Civil Code Section 2923.55(f). (*Id.* at 185:1-187:6, 187:24-188:11, 188:21-190:25.)

Daniels contested it timely, which contest was due to SLS's failure to properly credit his payments—SLS made accounting errors, assessed fees it could not explain at deposition, and improperly assessed a negative escrow balance charge when there was an escrow surplus. *Id.* at 81:19-83:19, 85:24-88:22; 90:11-91:24, 108:1-9, 129:23-137:19, 186:14-187:6)

SLS was unable to present evidence that it conducted an investigation as required by the relevant statutes. SLS's 30(b)(6) witness Ms. Ollier, the only witness

- 9 -

it disclosed per Rule 26(a), was unable to present any evidence that an investigation took place as to, among other subjects, returned payments that were marked as delinquent. *Id.* at 173:3-180:25.  For instance, Ms. Ollier testified that there was not an investigation to "clean up" the improper foreclosure actions taken by SLS:

Q. What has SLS done to clean this up?

A. I'm not sure.

Q. Has SLS done anything, to your knowledge, to clean this up?

A. To my knowledge, no.

(*Id.* at 191:1-5.)

**D.     On March 12, 2025, Defendants' counsel informed Plaintiff's counsel it would call a new SLS representative as a witness at trial.**

On March 12, 2025, during the pre-trial conference of counsel, Defendants' counsel informed Plaintiff's counsel that Ms. Ollier was no longer employed by SLS, and that Defendants intended to have a new representative for SLS as a witness at trial. (*Id*. ¶ 11.) When Plaintiff's counsel raised the issue of prejudice caused by an undisclosed witness, Defendants' position was that impeachment was the appropriate remedy. (*Id.*)  As of this filing, SLS has not identified its new witness. (*Id.*) According to Ms. Ollier's LinkedIn, she left SLS in June of 2024, a fact that SLS sat on for close to a year, during which time it served amended Rule 26(a) disclosures and failed to identify a different corporate witness.  (Lapine Decl. ¶ 13, Ex. 10.)

**III.   <u>ARGUMENT</u>**

**A.     Rule 37 Bars SLS From Calling a Never-Before-Disclosed Witness at Trial to Testify on Subjects Covered by Ms. Ollier.**

Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires a party to provide, "the *name* and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information." While providing the address and telephone is qualified on knowing that information, the name is not. Nonetheless, SLS has never identified a named employee at SLS in its

- 10 -

Rule 26(a) disclosure, only a category of "person(s) most knowledgeable" on a list of subjects. (*See* Lapine Decl. ¶ 9, Ex. 8, at 2.) Relying on SLS's disclosures, Plaintiff noticed the deposition of SLS, and SLS produced Ms. Ollier. She testified on behalf of SLS and binded SLS regarding all subjects in SLS's Rule 26(a) disclosures. *See supra* Section II. B. SLS also designated Ms. Ollier as its Rule 30(b)(6) witness and person most knowledgeable on the matters listed for examination in Daniels' Second Amended Deposition Notice (Lapine Decl. ¶ 6, Ex. 5, at 3), and Ms. Ollier testified to those matters (*see supra* Section II. C).

Federal Rule of Civil Procedure 37(c)(1) states: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e) the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial ...." SLS's counsel informed Plaintiff's counsel on March 12, 2025, that SLS intended to call a new corporate representative as its witness at trial. Federal Rule of Civil Procedure 26(e) requires that disclosures be supplemented "in a timely manner," and SLS's disclosure is far from timely.  Ms. Ollier left SLS in June of 2024.  SLS sat on that information and withheld it from Plaintiff until the eve of trial, a stunning development.

The purpose of these "disclosures is to identify those witnesses that a party intends to use at trial," *Vieste, LLC v. Hill Redwood Dev.*, Case No. 09-cv-4024-JSW (DMR), 2011 WL 2181200, at *3 (N.D. Cal. June 3, 2011), yet Plaintiff still does not know who SLS's new witness may be, (Lapine Decl. ¶ 11).

"The Advisory Committee Notes to the 1993 amendments to Rule 37 describe subsection (c)(1) as a 'self-executing,' 'automatic' sanction to 'provide a strong inducement for disclosure of material' that must be disclosed pursuant to Rule 26." *Tristrata, Inc. v. Microsoft Corp.*, Case No. 11-cv-3797-JST, 2013 WL 12172909, at *2 (N.D. Cal. May 13, 2013). That sanction should apply here, where SLS stands to benefit from a new Rule 30(b)(6) witness given the admissions by Ms. Ollier on key

PLAINTIFF'S MOTION *IN LIMINE* NO. 3 RE: UNDISCLOSED WITNESSES
CASE NO: 2:22-CV-06776-MCS-PD

factual issues. It calls for that witness to be excluded at trial to avoid grave prejudice occasioned by a trial by ambush.

**B. SLS's Failure to Disclose its New Witness Is Neither Substantially Justified nor Harmless.**

Under Rule 37(c)(1), a party that fails to meet Rule 26(a) disclosure requirements in identifying a witness is not permitted to use that witness at trial unless the party's error was "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (describes that Rule 37(c)(1) "gives teeth" to Rule 26(a) requirements). As the purpose of Rule 26(a) is "to accelerate the exchange of basic information" between the parties and to "eliminate the paper work involved in requesting such information," a "harmless" omission of witness information is likely when the witness's identity was already known to the opposing party. *See* Adv. Comm. Notes on 1993 Amendments to FRCP 26(a). It is SLS's burden to demonstrate harmlessness here, not Plaintiff's burden to demonstrate harm. *Baird v. Blackrock Institutional Tr. Co., N.A.*, 330 F.R.D. 241, 248 (N.D. Cal. 2019). SLS cannot demonstrate harmlessness or substantial justification.

1. *SLS Knew of Ms. Ollier's Unavailability for Months.*

SLS's justification for calling a new witness at trial is that Ms. Ollier is no longer employed by SLS and lives beyond the Court's subpoena power. Similarly in *Baird*, the defendant removed an employee called Mr. Feliciani from its disclosures after he retired and substituted a new witness, but the plaintiff had already deposed Mr. Feliciani on the same topics to which the substitute witness was expected to testify. 330 F.R.D. 244. Of course, one's retirement does not preclude them from being a witness. Ms. Ollier's LinkedIn profile indicates that she changed employment in June 2024. (Lapine Decl. ¶ 13, Ex. 10.) SLS must have known this when it submitted the declaration of Katisha Gill in support of its summary judgment

papers. (*Id.* ¶ 10, Ex. 9, ECF No. 152-2.) There is no substantial justification for SLS to wait until now before disclosing a new witness.

### 2.    *SLS's New Witness Would Result in a Trial-by-Ambush.*

SLS also cannot meet its burden to demonstrate harmlessness. Even if the failure to disclose was an "honest mistake," it still may not be harmless as a party "should be able to rely on Rule 26 disclosures and not be required to second guess whether a disclosing party has purposefully omitted a potential witness or done so accidently." *Rhodes v. Sutter Health*, 949 F. Supp. 2d 997, 1010 (E.D. Cal. 2013). In *Baird*, defendant argued that the plaintiff could not show it would have conducted discovery differently had the witness been disclosed sooner since it had agreed not to propound new discovery. (*Id.* at 247.) The court rejected that argument because it was not clear whether the plaintiffs would have limited their discovery had they known about the disclosures. (*Id.*)

Here, had SLS disclosed other individuals with knowledge of its investigation of Plaintiff's credit dispute, accounting errors, and automated inexplicable charges on Plaintiff's account, those other individuals' testimony might have led to Plaintiff propounding substantially different discovery—not simply deposing the newest witness. *See, e.g., Ollier v. Sweetwater Union High Sch. Dist.*, 267 F.R.D. 339, 343 (S.D. Cal. 2010) (withholding basic information or untimely disclosure is not harmless if it impacts decisions that a party made during the course of litigation or results in undue costs for parties). SLS should not be allowed to better bolster the positions taken by its 30(b)(6) witness with a new witness who was never disclosed at this stage in the proceedings.

### 3.    *SLS's New Witness Would Confuse the Issues and Mislead the Jury.*

To prevent confusion and misleading the jury, testimony that is duplicative and cumulative should be excluded. Fed. R. Evid. 403. If SLS designates a new corporate representative in addition to Ms. Ollier, Defendants' counsel have

- 13 -

suggested that impeachment is the appropriate remedy. (*Id.* ¶ 11.) While impeachment is effective when an individual person contradicts their own testimony, the situation here requires a jury to fully comprehend the abstract concept that both persons are testifying on behalf of SLS and, for purposes of this case, are the same entity. Should SLS's new witness arrive with all of the knowledge that Ms. Ollier lacked, it will present a substantial danger confusing the issues, misleading the jury, and unfairly prejudicing Plaintiff.

### C.    If permitted to offer new witnesses at trial, SLS is judicially estopped from asserting incompatible positions.

Under the equitable doctrine of judicial estoppel, a party is precluded from gaining an advantage by asserting one position, and then later taking an incompatible position to gain a second advantage. *Rissetto v. Plumbers & Steamfitters Loc. 343*, 94 F.3d 597, 600 (9th Cir. 1996).  SLS disclosed its unidentified person(s) most knowledgeable by subject matter and produced Ms. Ollier as its 30(b)(6) witness, who testified that she was the person most knowledgeable on topics 1 through 8 in Plaintiff's deposition notice, which encompassed the subjects in SLS's Amended Rule 26(a) Disclosures. Ms. Ollier proceeded to testify on each of those subjects. To the extent that SLS is permitted to call a previously undisclosed corporate witness at trial, the Court should preclude SLS from using the new witness to gain an advantage. That witness should be estopped from contradicting the key positions taken by SLS at its 30(b)(6) deposition, which are as follows:

- SLS has a responsibility as part of normal loan servicing to provide borrowers with monthly statements that indicate if there are changes in their monthly payment amount. (Lapine Decl. ¶ 7, Ex. 6, at 20:5-20, 21:6-10.)
- SLS failed to send monthly loan statements, delinquency notices, and an annual escrow analysis to Daniels which were required under normal loan servicing, while admitting that Daniels had no other method of

obtaining this information. (*Id.* at 20:1-22:22, 31:23-33:20, 75:24-76:4, 77:4-10.)

- SLS made accounting errors and assessed fees that it could not explain in violation of its servicing obligations, leading to every bill after November 2019 being false and inaccurate. (*Id.* at 81:19-83:19, 85:24-88:22; 90:11-91:24, 108:1-9, 129:23-137:19, 186:14-187:6.)

- The foreclosure was improper and did not meet statutory notice guidelines—it was caused by SLS incorrectly crediting his payments, and it proceeded forward impermissibly even though Daniels had timely disputed it. (*Id.* at 183:23-184:7, 187:24-188:11, 188:21-190:2.)

- As SLS's 30(b)(6) witness, Ms. Ollier was unable to present any evidence that an investigation took place. Investigations are required by the relevant statutes. (*Id.* at 173:3-180:25, 191:1-5.)

## IV.    CONCLUSION

For the foregoing reasons, Daniels respectfully requests that the Court exclude all testimony, argument, and evidence related to SLS's new undisclosed witnesses in its Amended Rule 26(a) Disclosures.

Dated: March 24, 2025

**STEPTOE LLP**
RYAN M. LAPINE

By:    */s/ Ryan M. Lapine*
Ryan M. Lapine

Attorneys for Plaintiff
ROBERT N. DANIELS

- 15 -

## <u>LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record for the United States certifies that this brief contains 3631 words in compliance with the word limit of L.R. 11-6.1.

*/s/ Ryan M. Lapine*

Ryan M. Lapine

PLAINTIFF'S MOTION *IN LIMINE* NO. 3 RE: UNDISCLOSED WITNESSES
CASE NO: 2:22-CV-06776-MCS-PD

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 24, 2025, a copy of the foregoing PLAINTIFF'S MOTION *IN LIMINE* NO. 3 TO EXCLUDE ALL TESTIMONY, OPINION, AND EVIDENCE FROM UNDISCLOSED WITNESSES, INCLUDING WITHOUT LIMITATION DEFENDANT SPECIALIZED LOAN SERVICING, LLC'S AGENTS AND EMPLOYEES was filed electronically and served by U.S. Mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/  Ryan M. Lapine*
Ryan M. Lapine

CERTIFICATE OF SERVICE