UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT N. DANIELS,<br><br>    Plaintiff,<br><br>  v.<br><br>SPECIALIZED LOAN SERVICING, LLC, and U.S. BANK, N.A.,<br><br>    Defendants. | Case No. 2:22-cv-06776-MCS-PD<br><br>**ORDER RE: MOTIONS IN LIMINE (ECF NOS. 223, 224, 225, 226, 227, 234, 235, 236, 237)** |

1

Plaintiff Robert N. Daniels moves in limine: (1) to preclude evidence or argument of prior litigation between the parties, (Pl.'s MIL No. 1, ECF No. 234); (2) to preclude Defendants Specialized Loan Servicing, LLC (SLS), and U.S. Bank, N.A.'s expert Dean Binder from testifying, (Pl.'s MIL No. 2, ECF No. 235); (3) to preclude Fred Korb from testifying, (Pl's MIL No. 3, ECF No. 236); and (4) to preclude Defendants from calling Laura Ollier to testify if she is not first made available in Plaintiff's case-in-chief, (Pl.'s MIL No. 4, ECF No. 237). Defendants oppose MIL Nos. 1–3, (Opp'ns to Pl.'s MILs Nos. 1–3, ECF Nos. 240–42), but do not oppose MIL No. 4, (Non-Opp'n to Pl.'s MIL No. 4, ECF No. 243).

Defendants move in limine: (1) to preclude evidence of emotional distress damages and medical damages, (Defs.' MIL No. 1, ECF No. 223); (2) to preclude evidence of credit denials and damages, (Defs.' MIL No. 2, ECF No. 224); (3) to preclude evidence of lost equity, (Defs.' MIL No. 3, ECF No. 225); (4) to exclude testimony and argument that escrow funds may be used to satisfy principal and interest payments, (Defs.' MIL No. 4, ECF No. 226); and (5) to exclude testimony from undisclosed witnesses, (Defs.' MIL No. 5, ECF No. 227). Plaintiff opposes the motions. (Opp'ns to Defs.' MILs Nos. 1–5, ECF Nos. 247–51, 264).

## I.    BACKGROUND

This is a credit reporting dispute. In 2006, Plaintiff executed a Deed of Trust with Americorp Funding to secure a $1.5 million residential mortgage. In 2010, SLS became the loan servicer, and in 2012, Americorp reassigned the loan to U.S. Bank as the trustee. In 2014, Plaintiff executed a Settlement Agreement with Defendants to reinstate the loan. Plaintiff later learned that SLS reported him as delinquent to a number of credit reporting agencies in an amount that he believes did not match his level of debt. He then filed this suit, claiming that between 2014 and 2022, SLS violated federal and state law by not sending him monthly billing statements, inaccurately calculating the amounts owed on his loan and held in escrow, improperly reporting the loan as delinquent, and

2

failing to investigate the erroneous reporting. According to Plaintiff, all of this conduct violated the terms of both the 2006 Deed of Trust and the 2014 Settlement Agreement. (*See generally* Pl.'s Mem. of Fact & Law, ECF No. 233; Defs.' Mem. of Fact & Law, ECF No. 229; Proposed Final Pretrial Conference Order, ECF No. 266-1.)

In the operative complaint, Plaintiff brought 16 claims: (1) willful violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq., against SLS; (2) negligent violation of the FCRA against SLS; (3) violation of the Truth in Lending Act (TILA), 12 C.F.R. § 1026.41, against SLS; (4) violation of the TILA against SLS; (5) willful violation of the California Consumer Credit Reporting Agencies Act (CCCRAA), Cal. Civ. Code § 1785 et seq., against SLS; (6) negligent violation of the CCCRAA against SLS; (7) violation of the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act), Cal. Civ. Code. § 1788 et seq., against SLS; (8) violation of the Homeowner Bill of Rights, Cal. Civ. Code § 2923.55, against all Defendants; (9) violation of the California Unfair Competition Law (UCL), Cal. Civ. Code § 17200 et seq., against all Defendants; (10) breach of contract as to § 3 of the 2006 Deed of Trust against all Defendants; (11) breach of contract as to § 15 of the 2006 Deed of Trust against all Defendants; (12) breach of the implied covenant of good faith and fair dealing as to the 2006 Deed of Trust against all Defendants; (13) breach of the implied covenant of good faith and fair dealing as to the 2006 Deed of Trust against all Defendants; (14) breach of contract as to the 2014 Settlement Agreement against SLS; (15) breach of the implied covenant of good faith and fair dealing as to the 2014 Settlement Agreement against SLS; and (16) declaratory relief against SLS. (TAC ¶¶ 77–264, ECF No. 97.)

The Court granted summary judgment in Defendants' favor on Claims 3–4, 7, 10–11, 12–13 (against SLS only), and 15–16. (*See generally* MSJ Order, ECF No. 165; Order Re: Suppl. Briefing, ECF No. 174.) The Court also found that Plaintiff abandoned Claims 8 and 9. (MSJ Order 13.) Accordingly, the only claims remaining for trial are Claims 1–2, 5–6, and 14 against SLS, and Claims 12–13 against U.S. Bank. (Proposed

3

Final Pretrial Conference Order 3–4.)

In their pleadings, Defendants each asserted 45 affirmative defenses. (*See* SLS Answer to TAC, ECF No. 108; U.S. Bank Answer to TAC, ECF No 135.) Defendants indicate that they intend to pursue 9 affirmative defenses at trial: (1) unclean hands; (2) res judicata and collateral estoppel; (3) laches; (4) statute of limitations; (5) reasonable procedures; (6) failure to mitigate; (7) comparative fault; (8) acts of third parties; and (9) estoppel. (Proposed Final Pretrial Conference Order 8–9.)[1]

## II.   MOTIONS IN LIMINE

### A.   Plaintiff's Motion in Limine No. 1

Plaintiff moves to exclude any evidence, argument, and testimony regarding three prior lawsuits between him and SLS. (Pl.'s MIL No. 1.) He argues that evidence of these prior lawsuits is inadmissible "other acts" evidence under Federal Rule of Evidence 404(b). (*Id.* at 3–4.) "Evidence of any other . . . act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Plaintiff appears to be concerned that Defendants will offer this evidence to prove that he has a litigious character and that he brought this lawsuit in conformity with that character. (*See* Pl.'s MIL No. 1, at 1 ("Litigiousness is the sort of character trait with which Rule 404(b) is concerned.") (quoting *Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988)).)

The motion is denied. Defendants represent that they do not intend to offer evidence of the prior litigation to prove Plaintiff has a litigious character or that he acted in conformity with that character in bringing this lawsuit. (Opp'n to Pl.'s MIL No. 1, at 3–6.) Plaintiff will be permitted to re-raise his objections at trial if he believes Defendant is trying to offer impermissible character evidence.

---

[1] The Court deems any other affirmative defenses abandoned.

**B.** **Plaintiff's Motion in Limine No. 2**

Plaintiff next asks the Court to preclude Dean Binder, Defendants' credit reporting, credit damages, credit dispute investigations, and FCRA compliance expert, from testifying. (Pl.'s MIL No. 2.) Plaintiff argues that Mr. Binder is not qualified as an expert on the issues underlying his opinions and that his opinions are not based on sufficient facts, data, or reliable methodologies. (*See generally id.*)

Federal Rule of Evidence 702 authorizes "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to provide an opinion if the expert's specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue." For an expert's opinion to be admissible, the expert's opinion must be "based on sufficient facts or data," the testimony must be the "product of reliable principles and methods," and the "expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. Federal courts have a gatekeeping responsibility to engage in objective screening to ensure that evidence "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (clarifying that the gatekeeping obligation "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge"). The proponent of the expert testimony bears the burden of proving its admissibility. *United States v. 87.98 Acres of Land*, 530 F.3d 899, 904 (9th Cir. 2008).

First, Plaintiff argues that Mr. Binder "has no knowledge, skill, experience, or education that is directly relevant to the specific issues on which SLS intends to offer him as an expert." (Pl.'s MIL No. 2, at 3.) In particular, Plaintiff complains that Mr. Binder has no experience or training in mortgage lending or servicing. (*Id.* at 4.) Mr. Binder plans to offer two opinion: (1) SLS's investigation of Plaintiff's dispute was conducted "within the industry standard guidelines"; and (2) "there is no evidence to support that Defendant damaged Plaintiff's creditworthiness." (Lapine Decl. Ex. 1, at

5

7–8, ECF No. 238-1.) These opinions appear to be related to credit dispute investigations and resulting damages, not mortgage lending and serving. Therefore, Mr. Binder's lack of direct experience in the mortgage lending and servicing industry does not mean he is not qualified to offer these opinions. In fact, Mr. Binder proffers that he spent six years working at the credit reporting company Equifax where he was directly involved in the credit dispute investigation process. (Binder Decl. ¶ 4, ECF No. 245.) During those six years, he managed "large specialty dispute teams" and oversaw "every step of[] the consumer dispute life cycle." (*Id.*) Mr. Binder also spent seven years working at a credit scoring company, FICO, during which time he "routinely analyzed the effect credit events have on an individual credit score and the impact the score may have on a consumer." (*Id.* ¶ 15.) He is also FCRA certified by the Consumer Data Industry Association. (*Id.* ¶¶ 4, 15.)

Based on the foregoing, the Court is satisfied that Mr. Binder is qualified to offer his opinions relating to credit dispute investigation standards and credit damages. If Plaintiff believes Mr. Binder's lack of specialized experience in the mortgage lending and servicing industries undercuts his opinions, Plaintiff will have an opportunity to explore perceived deficiency on cross examination. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.").

Second, the Court rejects Plaintiff's contention that Mr. Binder's opinions are not supported by sufficient facts, data, or methodologies. Plaintiff argues that Mr. Binder did not speak directly to anyone at SLS regarding its investigation of Plaintiff's dispute, nor did he review certain documents, including communications between SLS and credit reporting agencies, SLS's manuals pertaining to investigating credit dispute, and documents produced in discovery purporting to show that Plaintiff received "adverse

6

action letters." (Pl.'s MIL No. 2, at 5–10.) Instead, Plaintiff argues that Mr. Binder's opinions are based on nothing more than a "cursory document review" and "cherry-picked evidence." (*Id.*) Mr. Binder, however, proffers that he reviewed documents in compliance with industry standards relating to investigating and reviewing credit disputes. (Binder Decl. ¶¶ 7–8.) These documents include an automated consumer dispute verification form and the "Payment Histories maintained by SLS." (*Id.*) His expert report indicates he reviewed a variety of other documents produced in discovery as well as the parties' discovery responses. (Lapine Decl. Ex. 1, at 3–4.) Plaintiff's disagreement with Mr. Binder's methodology and the sufficiency of the facts underlying his opinions presents a basis for cross-examining him, not for excluding the opinions. *See Daubert*, 509 U.S. at 596; *Primiano*, 598 F.3d at 564.

The motion is denied.

### C.   Plaintiff's Motion in Limine No. 3

Plaintiff next seeks to preclude Defendants from calling Fred Korb as a witness because he was not disclosed as a witness until after the close of discovery. (Pl.'s MIL No. 3, at 7.) Mr. Korb is designated as SLS's "person most knowledgeable" under Federal Rule of Civil Procedure 30(b)(6). (Defs.' Witness List 2, ECF No. 228.) At the Final Pretrial Conference, Defendants' counsel indicated that Defendants no longer intend to call Mr. Korb as a trial witness and withdrew their opposition to the motion. Accordingly, the Court grants the motion.

### D.   Plaintiff's Motion in Limine No. 4

Plaintiff also seeks an order barring Defendants from calling Laura Ollier, SLS's original Rule 30(b)(6) witness, in their case if Defendants do not first make her available to testify first in Plaintiff's case-in-chief. (Pl.'s MIL No. 4.) Because Defendants do not oppose the motion, (Non-Opp'n to Pl.'s MIL No. 4), the Court grants the motion.

**E.    Defendants' Motion in Limine No. 1**

Defendants seek an order precluding Plaintiff from (1) offering any testimony from his treating physicians or introducing medical records; (2) presenting any evidence or argument of emotional distress or medical damages; and (3) suggesting a specific amount of emotional distress or medical damages to the jury. (Defs.' MIL No. 1.)

First, Defendants reason that Plaintiff should not be able to call his treating physicians as trial witnesses because he never designated them as expert witnesses. (*Id.* at 3–5.) However, because Plaintiff indicates that he does currently plan to call any of his treating physicians at trial, (Opp'n to Defs.' MIL No. 1, at 4), and since none of his treating physicians appear on his trial witness list, (Pl.'s Witness List, ECF No. 232), the Court defers ruling on whether Plaintiff may call his treating physicians at trial. As to the medical records, it appears that Plaintiff disclosed the identity of his treating physicians in his Amended Initial Disclosures in December 2023, (Lapine Opp'n Decl. Ex. A, ECF No 253-1), and Defendants subpoenaed the medical records in February 2024, (Lapine Opp'n Decl. Ex. B, ECF No. 253-2). The Court declines to exclude any medical records that were timely disclosed during discovery.

Second, Defendants argue that Plaintiff should not be allowed to offer any evidence of emotional distress or medical damages because he did not disclose an expert witness to testify on those topics. (Defs.' MIL No. 1, at 5–6.) Defendants' request is not well taken. In the Ninth Circuit, a plaintiff does not need to offer expert testimony to seek emotional distress damages. *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (9th Cir. 2003) (holding that a plaintiff's own testimony is sufficient to support an award of emotional distress damages); *Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222, 1235 (C.D. Cal. 2007) (same). Plaintiff plans to offer his own testimony, his wife's testimony, and his medical records to support his claim for emotional distress and medical damages. (Opp'n to Defs.' MIL No. 1, at 5.) Because there is no requirement that he prove his emotional distress and medical damages with expert testimony, Plaintiff will be allowed to offer this evidence.

Third, Defendants argue that Plaintiff should not be allowed to suggest a specific dollar amount corresponding for emotional distress and medical damages to the jury because he never provided a computation of those damages. (Defs.' MIL No. 1, at 6.) In general, a party must disclose "a computation of each category of damages claimed by the disclosing party" and supporting documentation. Fed. R. Civ. P. 26(a)(1)(A)(iii). However, because emotional distress damages are "difficult to quantify and are generally a fact issue for the jury's consideration," courts do not require a computation for those types of damages. *Simmons v. Bauer Rentals*, No. 1:23-cv-00523-JLT-SAB, 2025 WL 474258, at *2 (E.D. Cal. Feb. 12, 2025) (internal quotation marks omitted) (collecting cases). Plaintiff does not dispute that he did not provide a computation of emotional distress and medical damages. (*See* Opp'n to Defs.' MIL No. 1, at 6–7.) While Plaintiff's decision not to provide a damages computation does not prevent him from seeking emotional distress and medical damages, it does prevent him from suggesting a specific amount of such damages to the jury. *See Maharaj v. Cal. Bank & Tr.*, 288 F.R.D. 458, 464 (E.D. Cal. 2013); *E.E.O.C. v. Wal-Mart Stores, Inc.*, 276 F.R.D. 637, 639–40 (E.D. Wash. 2011).

The motion is granted in part and denied in part. Plaintiff will be able to offer evidence of his emotional distress and medical damages, but he will not be allowed to suggest a specific number to the jury. Because Plaintiff does not currently plan on calling his treating physicians at trial, the Court declines to consider whether they will be able to testify.

### F.  Defendants' Motion in Limine No. 2

Defendants next seek an ordering excluding all evidence of alleged credit denials and damages Plaintiff claims to have suffered as a result of SLS's credit reporting. (Defs.' MIL No. 2.) Defendants argue that Plaintiff failed to disclose any evidence of credit denials during discovery and never provided a computation of his claimed damages. (*Id.* at 3–4.)

9

As to Defendants' first argument that "Plaintiff has produced no adverse action notices reflecting denials of credit," (*id.* at 3), Plaintiff did in fact disclose witnesses and produce documents indicating that Plaintiff was denied credit after SLS reported Plaintiff delinquent. For example, Plaintiff disclosed a mortgage broker named Carlo Tovar who sent Plaintiff an email indicating that Plaintiff's "file was ineligible for approval because of the rolling lates and derogatory trades" and that Mr. Tovar would "not be able to offer [Plaintiff] a loan proposal at this time." (Lapine Opp'n Decl. ¶ 4, ECF No. 253; *id.* Ex. C, ECF No. 253-3.) Because Mr. Tovar and the email were both timely disclosed during discovery, the Court is not persuaded that Plaintiff failed to produce any evidence of alleged credit denials. Plaintiff will be permitted to offer timely produced evidence and disclosed witnesses. Defendants can re-raise their objection at trial if they believe certain evidence or witnesses were not properly disclosed.

As to Defendants' second argument that Plaintiff failed to provide the required Rule 26(a)(1)(A)(iii) computation of his claimed credit damages, (Defs.' MIL No. 2, at 4), Plaintiff did provide an expert report from Jeffrey Bussell in which Mr. Bussell opines that "the amount due on the statement dated November 17, 2023 does not accurately reflect the status of Mr. Daniels' loan as of that date," (Lapine Opp'n Decl. Ex. S, at 3, ECF No. 253-19). In his report, Mr. Bussell provides a detailed computation of what he believes the true loan balance was at that time if Plaintiff had been able to successfully refinance his loan. (*Id.* at 7–9.) Mr. Bussell's report therefore appears to be a computation of a portion of Plaintiff's claimed credit damages. To the extent, however, that Plaintiff is seeking damages based on harm to his "credit reputation," those damages are, like emotional distress damages, difficult to accurately calculate, so a Rule 26(a)(1)(A)(iii) computation is generally not required. *See Hernandez v. Ditech Fin. LLC*, No. CV 17-04294-GW (JEMx), 2018 WL 11347340, at *1–2 (C.D. Cal. Dec. 3, 2018). Therefore, Plaintiff appears to have provided a computation of his claimed credit damages that were readily calculable in compliance with his disclosure obligations.

Defendants make an additional argument that Plaintiff should not be able to offer evidence of his alleged credit damages because "such damages are not cognizable under the FCRA and CCRAA." (Defs.' MIL No. 2, at 8.) The Court warned that "[m]otions in limine should not be disguised motions for summary adjudication of issues." (Order Re: Jury Trial § II(A)(1), ECF No. 39.) With this argument, Defendants effectively seek summary adjudication of certain theories and types of damages Plaintiff may elect to pursue at trial as a matter of law. Motions in limine should not be used "as a sweeping means of testing issues of law." 75 Am. Jur. 2d Trial § 42. This issue properly could have been adjudicated at the summary judgment stage, and properly may be raised in a motion for judgment as a matter of law at trial. A motion in limine, on the other hand, is not an appropriate vehicle for Defendants' argument. Accordingly, the Court declines at this juncture to consider Defendants' argument that the credit damages Plaintiff seeks are not recoverable as a matter of law.

The motion is denied.

### G.      Defendants' Motion in Limine No. 3

Defendants also seek an order excluding evidence and testimony relating to lost equity damages. (Defs.' MIL No. 3.) Plaintiff never provided a computation of his claimed lost equity damages as required under Rule 26(a)(1)(A)(iii). (Cahill Decl. ¶ 11, ECF No. 227-1.) Plaintiff does not dispute that he did not provide a computation, but instead argues that such damages are not subject to easy calculation and that Defendants were not diligent in pursuing discovery on these damages. (Opp'n to Defs.' MIL No. 3, at 8–9.)

Plaintiff points to no authority suggesting that a Rule 26(a)(1)(A)(iii) computation of damages stemming from lost equity in real property is not required. The Court is not persuaded that these damages have such a "vague and unspecific nature" that they are "often times not readily amendable to computation" in the same way that emotional distress and credit reputation damages are. *See Goldstein v. CBE Grp., Inc.,*

No. CV 12-2540 ODW (AJWx), 2012 WL 4087253, at *2 (C.D. Cal. Sept. 17, 2012) (internal quotation marks and alteration omitted). Accordingly, Plaintiff was required to provide a computation of his claimed lost equity damages.

The Court is not persuaded that Plaintiff's failure to provide the required computation should be excused by Defendants' purported "lack of diligence." (Opp'n to Defs.' MIL No. 3, at 8–9.) Rule 26 makes clear that a party is obligated to provide a computation of each category of damages it seeks "without awaiting a discovery request." Fed. R. Civ. P. 26(a)(1)(A)(iii). Plaintiff's burden to provide a damages computation was completely independent of Defendants' actions (or inaction) during discovery. Because he did not provide a computation of his claimed lost equity damages, Plaintiff will not be allowed to offer any evidence of those damages at trial. *See* Fed. R. Civ. P. 37(c)(1).

The motion is granted.

### H. Defendants' Motion in Limine No. 4

Defendants move to exclude all "argument and testimony that escrow funds may be used to satisfy principal and interest payments." (Defs.' MIL No. 4, at 1.) Defendants argue that such an application of escrow funds would violate the terms of the 2006 Deed of Trust and applicable federal laws and regulations. (*Id.* at 3–4.) Plaintiff responds that Defendants are misconstruing his position. (Opp'n to Defs.' MIL No. 4.) Plaintiff instead intends to argue that his payments should never have gone into escrow in the first place. (*Id.* at 3–5.) Given the dispute about what Plaintiff intends to prove and argue at trial, the Court denies the motion. Defendants may re-raise their objection at trial if the issue arises.

### I. Defendants' Motion in Limine No. 5

Defendants also seek to preclude testimony from undisclosed witnesses Richard Farkas and "an unnamed individual from the Mortgage Law Firm." (Defs.' MIL No. 5,

at 2.) According to Defendants, Plaintiff never disclosed any of these witnesses on his Rule 26 disclosures. (Cahill Decl. ¶ 24; Cahill Decl. Ex. A.) Plaintiff does not dispute that he never included these witnesses in his Rule 26 disclosures. (Opp'n to Defs.' MIL No. 5.)[2]

If a party fails to provide information or identify a witness during the discovery phase, the party may not use that information or witness to supply evidence at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Courts consider several factors in this evaluation: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence[;] and (5) the nondisclosing party's explanation for it[s] failure to disclose the evidence." *Dey L.P. v. Ivax Pharms., Inc.*, 233 F.R.D. 567, 571 (C.D. Cal. 2005) (citing *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)). The party facing sanctions bears the burden to prove harmlessness. *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 741 (9th Cir. 2021). Because Plaintiff concedes that he did not include these witnesses on his Rule 26 disclosures and he is the party facing the exclusionary sanction, he bears the burden of demonstrating that his failure to comply with his disclosure requirements was harmless.

Mr. Farkas was Plaintiff's attorney in his previous lawsuits against SLS. (Farkas Decl. ¶¶ 1–2, ECF No. 157-52.) Plaintiff argues that Defendants have always known about Mr. Farkas's identity, so his omission from Plaintiff's Rule 26 disclosures is harmless. (Opp'n to Defs.' MIL No. 5, at 3–5.) According to Plaintiff, Defendants have been in contact with Mr. Farkas throughout the litigation, and Mr. Farkas even produced documents in response to a subpoena issued by Defendants. (*See* Lapine Opp'n Decl.

---

[2] Plaintiff filed a notice of errata indicating that his originally filed opposition had an error on the third page. (Not. of Errata, ECF No. 264.) His revised opposition fixes the error. (*Id.*) The Court considers the revised brief in resolving this motion and directs the Clerk to strike the originally filed brief at ECF No. 252 from the docket.

¶¶ 17–18, 26.) However, even if that is true, that does not excuse Plaintiff's duty to disclose his intent to rely on Mr. Farkas as a witness at trial. *See* Fed. R. Civ. P. 26(a)(1)(A)(i). Mr. Farkas's identity may not be a surprise, but Plaintiff's intent to call him as a trial witness is. As Plaintiff points out, Defendants elected not to depose Mr. Farkas during discovery. (*See* Opp'n to Defs.' MIL No. 5, at 4–5.) It is perfectly plausible that Defendants made that decision, despite knowing about Mr. Farkas's identity, because he did not appear in Plaintiff's Rule 26 disclosures. Given that Mr. Farkas's absence from Plaintiff's disclosures likely impacted the decisions Defendants made in defending this case, the Court cannot conclude that Plaintiff's failure to disclose him as a witness was harmless or substantially justified. *See* Fed. R. Civ. P. 37(c)(1).

As to the representatives from the Mortgage Law Firm, whom Plaintiff identifies in his opposition as Elaina Moore and Sally Garrison, Plaintiff argues that he should still be able to call them at trial because these witnesses are Defendants' agents, so it was Defendants' duty to disclose their identities. (Opp'n to Defs.' MIL No. 5, at 1, 5.) The Mortgage Law Firm became the substitute trustee for Plaintiff's loan in October 2023. (Lapine Opp'n Decl. Ex. P, ECF No. 253-16.) While Plaintiff represents that the Mortgage Law Firm was acting as SLS's agent, it appears that Plaintiff became aware of the Mortgage Law Firm around the time it became the substitute trustee in October 2023. Despite that, Plaintiff asserts that he did not learn the identities of the specific attorneys handling his loan at the Mortgage Law Firm until October 31, 2025, when he had to conduct his "own investigation" to ascertain their identities. (Opp'n to Defs.' MIL No. 5, at 5; Orozco Decl. ¶ 2, ECF No. 255.) That "investigation" entailed an associate at the firm representing Plaintiff in this lawsuit calling the Mortgage Law Firm and asking the receptionist for the name of the attorney handling Plaintiff's mortgage loan. (Orozco Decl. ¶ 2.) Plaintiff, however, offers no explanation as to why he waited until a month before trial before attempting to ascertain the identities of the attorneys handling his loan. Because it appears that Plaintiff had the means to easily identify these two witnesses but chose not to, the Court is not persuaded that he should be excused

from his failure to list them on his Rule 26 disclosures.

The motion is granted. The Court will preclude Plaintiff from calling Mr. Farkas, Ms. Moore, and Ms. Garrison as witnesses at trial.

## III.   CONCLUSION

For the foregoing reasons and those discussed at the final pretrial conference on November 24, 2025, the Court:

- Denies Plaintiff's Motions in Limine Nos. 1 and 2, ECF Nos. 234–35;
- Grants Plaintiff's Motions in Limine Nos. 3 and 4, ECF Nos. 236–37;
- Denies Defendants' Motion in Limine Nos. 2 and 4, ECF Nos. 224 and 226;
- Grants Defendants' Motions in Limine Nos. 3 and 5, ECF Nos. 225 and 227;
- Grants in part and denies in part Defendants' Motion in Limine No. 1, ECF No. 223;

All decisions on motions in limine are subject to reevaluation at trial. *See* Fed. R. Evid. 103 advisory committee's note to 2000 amendment ("Even where the court's ruling is definitive, nothing . . . prohibits the court from revisiting its decision when the evidence is to be offered."); *Luce v. United States*, 469 U.S. 38, 41–42 (1984) ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

**IT IS SO ORDERED.**

Dated: November 25, 2025

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

15