UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ROBERT N. DANIELS,

Plaintiff,

v.

SPECIALIZED LOAN SERVICING, LLC, et al.,

Defendants.

Case No. 2:22-cv-06776-MCS-PD

**ORDER RE: MOTION FOR ATTORNEYS' FEES AND COSTS (ECF NO. 335)**

Defendants Specialized Loan Servicing, LLC ("SLS"), and U.S. Bank, N.A., as Trustee for Chevy Chase Bank Funding, LLC Mortgage-Backed Certificates, Series 2007-1 ("U.S. Bank") move for an award of attorneys' fees and costs. (Mot., ECF No. 335.) Plaintiff Robert N. Daniels filed an opposition brief, (Opp'n, ECF No. 337), and Defendants replied, (Reply, ECF No. 338). The Court heard argument on the motion on April 29, 2026. (Mins., ECF No. 344.)

I.    **BACKGROUND**

This has been a long and hard-fought case. In brief, Plaintiff obtained a $1.5 million residential mortgage in 2006 secured by a Deed of Trust. (MSJ Order 1, ECF

1

No. 165.) SLS became the loan servicer in 2010. (*Id.*) In 2012, the original lender, Americorp Funding, assigned the mortgage to U.S. Bank. (*Id.*) In 2014, Plaintiff executed a Settlement Agreement with Defendants to reinstate his loan. (*Id.* at 1–2.) Plaintiff filed this action against Defendants in 2022 after learning that SLS had reported him as delinquent to credit reporting agencies in an amount he believed did not match his level of debt. (*Id.* at 2.)

The core of Plaintiff's contentions was that, between 2014 and 2022, Defendants did not send him monthly billing statements, inaccurately calculated the amounts owed on his loan and held in escrow, improperly reported his loan as delinquent, and failed to investigate the erroneous reporting. In his third amended complaint, Plaintiff brought sixteen claims against Defendants: (1) willful violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., against SLS; (2) negligent violation of the FCRA against SLS; (3) violation of the Truth in Lending Act ("TILA"), 12 C.F.R. § 1026.41, against SLS; (4) another violation of TILA against SLS; (5) willful violation of the California Consumer Credit Reporting Agencies Act ("CCCRAA"), Cal. Civ. Code § 1785 et seq., against SLS; (6) negligent violation of the CCCRAA against SLS; (7) violation of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 et seq., against SLS; (8) violation of the Homeowner Bill of Rights, Cal. Civ. Code § 2923.55, against all Defendants; (9) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq., against all Defendants; (10) breach of contract as to § 3 of the 2006 Deed of Trust against all Defendants; (11) breach of contract as to § 15 of the 2006 Deed of Trust against all Defendants; (12) breach of the implied covenant of good faith and fair dealing as to the 2006 Deed of Trust against all Defendants; (13) another breach of the implied covenant of good faith and fair dealing as to the 2006 Deed of Trust against all Defendants; (14) breach of contract as to the 2014 Settlement Agreement against SLS; (15) breach of the implied covenant of good faith and fair dealing as to the 2014 Settlement Agreement against SLS; and (16) declaratory relief against SLS. (TAC ¶¶ 77–264, ECF No. 97.)

The Court granted summary judgment in Defendants' favor on claims 3–4, 7, 10–11, and 16, and in SLS's favor on claims 12–13. (*See* MSJ Order 13.) The Court further found that Plaintiff had abandoned claims 8 and 9. (*Id.*) After supplemental briefing, the Court also granted summary judgment in Defendants' favor on claim 15. (Order Re: Suppl. Briefing, ECF No. 174.) The remaining claims proceeded to trial, and a jury returned a unanimous verdict in Defendants' favor on all remaining claims. (Verdict, ECF No. 327.)

## II.   DISCUSSION

Federal Rule of Civil Procedure 54(d)(2) authorizes a party to make a claim for attorneys' fees and related nontaxable expenses by motion. Rule 54 "creates a procedure but not a right to recovery attorneys' fees"; the rule requires "an independent source of authority for an award of attorneys' fees." *MRO Commc'ns, Inc. v. AT&T Co.*, 197 F.3d 1276, 1280–81 (9th Cir. 1999). "Under California law, contractual attorneys' fee provisions are generally enforceable." *Port of Stockton v. W. Bulk Carrier KS*, 371 F.3d 1119, 1121 (9th Cir. 2004) (citing Cal. Civ. Proc. Code § 1021).

### A.   Whether Defendants Are Entitled to Fees

The threshold issue the parties dispute is whether Defendants are entitled to fees at all. (Mot. 10–15; Opp'n 3–7.) California Civil Code section 1717 authorizes an award of attorneys' fees for "any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded" to the prevailing party. Cal. Civ. Code § 1717(a). Both the 2014 Settlement Agreement and 2006 Deed of Trust contain fee-shifting provisions that entitle the prevailing party to fees under section 1717(a).

Section 3(A) of the 2014 Settlement Agreement states that "the prevailing party in any action seeking to enforce this Agreement shall be entitled to their attorney's fees and costs in that enforcement action." (Cahill Decl. Ex. 10 § 3(A), ECF No. 335-2.)

3

Plaintiff argues this is not an "action seeking to enforce" the Settlement Agreement because he sued for money damages, rather than specific performance. (Opp'n 6–7.) But nothing in the Settlement Agreement suggests an "action seeking to enforce" it must seek specific performance as a remedy. Instead, the Settlement Agreement uses the broad language "*any* action seeking to enforce," rather than narrower language that would make clear that attorneys' fees are only available for claims seeking specific performance. (Cahill Decl. Ex. 10 § 3(A) (emphasis added).) To be sure, the Settlement Agreement required Defendants to take specific actions, including reinstating the loan, waiving late charges, returning the loan to "normal servicing," and rescinding the Notice of Default entered on May 14, 2012. (*Id.* § 1(A).) In his breach of contract claim, Plaintiff contended that SLS breached these obligations by returning payments Plaintiff had made and then erroneously reporting to credit reporting agencies that Plaintiff had failed to make timely payments and by assessing late fees. (TAC ¶ 243.) Through this claim, Plaintiff attempted to enforce his rights under the Settlement Agreement. The Settlement Agreement draws no distinction between Plaintiff choosing to enforce his rights with a suit for damages or a suit for specific performance. Because the jury returned a verdict in SLS's favor on the breach of contract claim relating to the Settlement Agreement, (Verdict ¶ 28), SLS is the prevailing party and is entitled to attorneys' fees.

Likewise, the Deed of Trust provides

> If . . . there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Agreement . . . . Lender's actions can include, but are not limited to . . . appearing in court; and . . . paying reasonable attorneys' fees to protect its interest in the Property and/or

rights under this Security Instrument . . . . Any amounts disbursed by Lender under this Section 9 shall become the additional debt of Borrower secured by this Security Instrument.

(Cahill Decl Ex. 9 § 9, ECF No. 335-2.) Plaintiff sought, by way of his breach of contract claims relating to the Deed of Trust, damages for Defendants' alleged breach, (TAC ¶¶ 210, 222, Prayer for Relief ¶ A), as well as "[a] declaration of how Daniels's previous payments have been applied to the Loan, the amount of Daniels's outstanding obligations under the Loan, and whether and by amount Daniels is in default on the Loan." (*Id.* Prayer for Relief ¶ I.) Plaintiff further sought a permanent injunction barring any future foreclosure of the property. (*Id.* Prayer for Relief ¶ D.) Given the remedies Plaintiff pursued, this action is plainly a legal proceeding that could have significantly affected Defendants' interest in the property and rights under the Deed of Trust. And while the Deed of Trust specifies the "Lender's interest," the original lender, Americorp Funding, transferred its interests in the property under the Deed of Trust to U.S. Bank, (MSJ Order 1), and loan servicers, like SLS, are eligible for attorneys' fees under contractual fee-shifting provisions when they "stand in the shoes" of the original signatory lender to litigate actions to enforce deeds of trust, *Ng v. U.S. Bank, N.A.*, No. 15-cv-04998-KAW, 2016 U.S. Dist. LEXIS 166054, at *17 (N.D. Cal. Nov. 30, 2016) (internal quotation marks omitted); *accord Apex LLC v. Korusfood.com*, 222 Cal. App. 4th 1010, 1017–18 (2013) ("A nonsignatory will be bound by an attorney fees provision in a contract when the nonsignatory party stands in the shoes of a party to the contract. In that situation, the nonsignatory party is liable for attorney fees if it would have been entitled to fees if it prevailed." (internal quotation marks and citations omitted)). U.S. Bank and SLS are thus also entitled to fees under the Deed of Trust.

///

5

**B.**     **Whether Defendants Can Recover Fees Incurred in Defense of All Claims**

Plaintiff next contends that, even if Defendants are entitled to recover fees under the Settlement Agreement and Deed of Trust, they can only recover fees incurred in defending against the breach of contract claims. (Opp'n 8–11.) He argues the related tort and statutory claims are not claims "on a contract," so fees incurred in defense of those claims must be apportioned out from the fee award. (*Id.*) Defendants respond that the tort and statutory claims are inextricably intertwined with the contract claims, so fee apportionment is not appropriate. (Reply 6–7.)

"Where a cause of action based on the contract providing for attorney's fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees under section 1717 only as they relate to the contract action." *Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 129 (1979). Courts do not award fees incurred defending claims outside the scope of a contractual fee-shifting provision. *See, e.g.*, *id.* ("In this case, the two promissory notes contained contract provisions for attorney's fees, but no such provision existed in the general line consignment agreement. Accordingly, attorney's fees incurred solely for defending causes of action based on the latter agreement and defending against the tort causes of action are not recoverable."); *Exxess Electronixx v. Heger Realty Corp.*, 64 Cal. App. 4th 698, 709 (1998) ("Because section 1717 does not encompass tort claims, it follows that tort claims do not 'enforce' a contract." (citations omitted)).

But "[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." *G.P.P., Inc. v. Guardian Prot. Prods., Inc.*, 126 F.4th 1367, 1380 (9th Cir. 2025) (quoting *Alperson*, 25 Cal. 3d at 129–30). In other words, a court need not apportion fees where it finds that "various claims were inextricably intertwined, making it impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units." *Abdallah v. United Savings*

*Bank*, 43 Cal. App. 4th 1101, 1111 (1996) (internal quotation marks and citations omitted).

Upon review of the briefing, the billing records, and the case record as a whole, the Court determines that the non-contract claims Plaintiff asserted against Defendants are so inextricably intertwined with the contract claims that Defendants' fees should not be apportioned. Plaintiff claimed that both Defendants breached the Deed of Trust by (1) not providing Plaintiff with an annual accounting of the escrow funds held on the account and retaining surplus amounts in Plaintiff's escrow accounts in excess of the maximum amount permitted under federal law, and (2) not sending timely and regular billing statements to Plaintiff. (TAC ¶¶ 203–04, 216.) Plaintiff further claimed SLS breached the Settlement Agreement by returning payments Plaintiff made on the loan and then erroneously reporting Plaintiff to credit agencies for failing to make timely monthly payments and improperly assessing late fees. (*Id.* ¶ 243.) The other claims Plaintiff concurrently asserted against Defendants revolved around the same alleged conduct. (*See, e.g., id.* ¶ 80 ("SLS reported to consumer reporting agencies that Daniels failed to timely make certain monthly payments on the Loan . . . ."); *id.* ¶ 100 ("SLS reported to consumer reporting agencies that Daniels failed to timely make certain monthly payments on the Loan and misreported the amount of money that Daniels owed."); *id.* ¶ 119 ("From at least November 2015 through April 2022, Defendants failed to send Daniels any mortgage statements . . . ."); *id.* ¶ 130 (same); *id.* ¶ 138 ("SLS reported to consumer credit reporting agencies that Daniels failed to timely make certain monthly payments on the Loan and misreported the amount of money Daniels owed."); *id.* ¶ 150 (same); *id.* ¶ 171 ("In its debt collection communications with Daniels and his wife, Lynne Daniels, SLS falsely communicated that Daniels had failed to make certain timely payments on the Loan."); *id.* ¶ 180 ("Defendant (through SLS) sent Daniels a notice, dated November 15, 2023, informing him of a purported past due amount and providing him until December 26, 2023 to respond in order to dispute that purported past due amount."); *id.* ¶¶ 193–94 (alleging Defendants engaged in unfair business

7

practices by violating the Truth in Lending Act and Homeowner Bill of Rights); *id.* ¶ 227 ("Defendants failed to properly credit Daniels's Loan for payments he timely made, falsely characterized his Loan as delinquent, and assessed late fees and similar charges."); *id.* ¶ 233 ("Defendants failed to properly credit Daniels's Loan for payments he timely made, falsely characterized his payments as insufficient and held payments in suspense, failed to send him statements, and failed to notify him of accounts being held in suspense . . . ."); *id.* ¶ 253 ("SLS, each month beginning with January 2021 through March of 2022, returned those payments to Daniels within days of receiving them. It thereafter erroneously reported to credit agencies that Daniels failed to make timely monthly payments due under his loan. It further, and without justification, both assessed late fees to Daniels for these timely payments and wrongfully reported these payments as late and outstanding.")).[1] Similarly, the defense of the contract claims was interlinked with Defendants' defense of the tort and statutory claims, as rebutting the allegations surrounding Defendants' reporting to credit agencies, crediting of Plaintiff's payments on his loan, and assessing late fees necessarily supported Defendants' defense of the breach element of the breach of contract claims. In other words, Defendants' efforts to defeat the non-contract claims all bolstered their positions that they did not breach the Deed of Trust or Settlement Agreement.

Moreover, although the billing entries provided by Defendants are detailed enough for the Court to determine whether Defendants' attorneys expended a reasonable amount of time toward the defense of their clients, they are not so detailed that the Court can systematically identify and exclude entries for time spent toward

---

[1] Plaintiff also asserted a claim for "a judicial determination as to where and how Daniels's previous payments have been applied to the Loan, what Daniels's outstanding obligations on the Loan are, and whether and by what amount Daniels is in default on the Loan." (TAC ¶ 264.) The merits of that declaratory claim are obviously enmeshed with the merits of the contract claims, so a more thorough discussion of apportionment is unnecessary.

issues that have no bearing on the contract claims. For example, entries memorializing time spent toward assessing escrow refund requirements and analyzing escrow statements do not, and likely could not, capture how that analysis would support the breach of contract defense as a distinct matter from the defense of Plaintiff's other claims. (*See, e.g.*, Cahill Decl. Ex. 5 at 3, ECF No. 335-2 (memorializing 0.9 hours spent toward "[a]nalyz[ing] escrow analysis statements from 2018-2022 for compliance with RESPA").) In short, the defense of the non-contract claims all implicate the defense of the contract claims, and delineation of compensable and noncompensable time entries is not practicable, so the Court declines to apportion fees.

Defendants are entitled to recover all fees incurred in this action.

### C.    Whether Defendants' Fees Are Reasonable

Defendants seek an award of $1,145,656.09 in fees, consisting of $259,497.32 in fees incurred by The Ryan Firm, $562,403.50 in fees incurred by Klinedinst PC, $14,400.00 in fees incurred to litigate the fee motion, and a $309,355.27 market adjustment. (Mot. 23–24; Cahill Decl. ¶ 36.)

Courts in the Ninth Circuit employ the familiar "lodestar method" to determine reasonable fees. *Roberts v. City & County of Honolulu*, 938 F.3d 1020, 1023 (9th Cir. 2019); *see Sternwest Corp. v. Ash*, 183 Cal. App. 3d 74, 77 (1986) (remanding with instructions for trial court to apply lodestar method to claim for fees under California Civil Code section 1717). The lodestar method proceeds in two steps. First, courts "multipl[y] the number of hours reasonably expended on the litigation by a reasonable hourly rate" to arrive at the lodestar figure. *Roberts*, 938 F.3d at 1023 (internal quotation marks omitted). Second, courts may "adjust the lodestar figure upward or downward based on a variety of factors not subsumed in the lodestar figure." *Id.* at 1024 (internal quotation marks omitted).

Courts calculate the number of compensable hours "by considering whether, in light of the circumstances, the time could reasonably have been billed to a private

client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The movant bears the burden of establishing the number of hours it requests is reasonable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Courts should begin the analysis "with the billing records the prevailing party has submitted." *Id.* "Courts generally accept the reasonableness of hours supported by declarations of counsel." *Rodriguez v. County of Los Angeles*, 96 F. Supp. 3d 1012, 1024 (C.D. Cal. 2014) (citing *Horsford v. Bd. of Trs. of Cal. State Univ.*, 132 Cal. App. 4th 359, 396 (2005)). If the records include hours that are inadequately documented or "excessive, redundant, or otherwise unnecessary," a court may exclude such hours from the sum or, if faced with a "massive fee application," may apply "across-the-board percentage cuts." *Gonzalez*, 729 F.3d at 1203 (internal quotation marks omitted); *accord Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (authorizing deduction of inadequately documented hours).

In determining the reasonable hourly rate, courts consider "[t]he prevailing market rates in the relevant community," which is "the forum in which the district court sits." *Gonzalez*, 729 F.3d at 1205 (internal quotation marks omitted). Courts must consider the experience, skill, and reputation of attorneys and paralegals in determining the appropriate rate. *Id.* at 1205–06; *accord Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016) (imploring courts to consider the "experience, reputation, and ability of the attorney; the outcome of the results of the proceedings; the customary fees; and the novelty or the difficulty of the question presented" (internal quotation marks omitted)). The movant must submit evidence to support the requested hourly rates. *Roberts*, 938 F.3d at 1024; *Gonzalez*, 729 F.3d at 1206. Courts ordinarily look to attorney affidavits and rate determinations in other cases to ascertain the prevailing fees in the community. *Roberts*, 938 F.3d at 1024; *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008). Judges also may apply their own knowledge of rates in the community. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

10

Here, counsel for Defendants generated contemporaneous billing records and invoiced their clients for their work. (Mase Decl. ¶¶ 9–10, ECF No. 335-1; *id.* Ex. 1, ECF No. 335-1; Cahill Decl ¶¶ 21, 23; *id.* Ex. 5.) The Ryan Firm invoiced Defendants for a total of 794.49 hours, (Mase Decl. ¶ 9), and Klinedinst PC invoiced Defendants for a total of 1,914.8 hours through filing the fee motion, (Cahill Decl. Ex. 7, ECF No. 335-2). All attorneys at The Ryan Firm charged hourly rates of $350.00. (Mase Decl. ¶ 8.) Partners at Klinedinst PC charged hourly rates of $335.00 in 2024 and $360.00 in 2025 and 2026. (Cahill Decl. ¶ 14.) Klinedinst PC associates charged $300.00, paralegals charged $115.00, and post-bar law clerks charged $130.00 throughout the representation. (*Id.*) The declarant attorneys and Defendants' fee expert submit these rates are either lower than their standard hourly rates or lower than the market rate for attorneys of similar skill and experience in the Los Angeles area. (*Id.* ¶ 24; Jardini Decl. ¶¶ 62–63, ECF No. 335-3.)

Given that counsel invoiced Defendants consistent with the time entries and rates they asserted, the Court accepts as reasonable counsel's billed hours and rates. Having reviewed counsel's detailed time records, the Court has not identified any excessive, redundant, or unreasonable time entries. Counsel's representations about the skill and experience of all the legal professionals who worked on the case support the rates they charged Defendants, and the rates also align with the Court's understanding of the market rates in the district for financial litigation specialists of similar experience and skill. *See Ingram*, 647 F.3d at 928. Plaintiff briefly argues that Defendants' time entries reflect redundant, duplicative, and inefficient billing. (Opp'n 12–13.) Plaintiff does not, however, point to any specific time entries he believes are objectionable. Nor does Plaintiff offer any evidence to contradict the conclusions of Defendants' billing expert, who analyzed counsel's billing records and identified "no inappropriate billing practices" and concluded "defense counsel reasonably expended their services and did not overstaff the case." (Jardini Decl. ¶¶ 81–82.) Based on an independent review of counsel's billing record, the Court agrees with Defendants' expert's analysis. Because

Plaintiff "bears the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged," and "may not rely on conclusory challenges to [Defendants'] evidence," the Court need to not expend any more time analyzing whether individual time entries are duplicative or reflect inefficient staffing decisions. *McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995).

Plaintiff also argues Defendants cannot recover fees associated with unsuccessful discovery motions or incurred for litigating the instant fee motion. (Opp'n 13–14.) Neither argument is persuasive. Plaintiff's counsel conceded at the hearing that the parties litigated several discovery-related motions, and the outcomes of those motions were mixed. Plaintiff won some discovery battles, and Defendants won others. And while fees are generally available to parties who prevail in discovery-related disputes, *see* Fed. R. Civ. P. 37(a)(5), fees were never awarded in conjunction with the discovery disputes in this case. The Court declines to reduce the fee award based on fees that could have been obtained at the time of litigating the individual discovery motions. Moreover, reducing the fee award at this late stage based on unsuccessful arguments Defendants mounted in discrete motions earlier in the litigation could have an deleterious effect on our adversarial system of justice. *See Thayer v. Wells Fargo Bank, N.A.*, 92 Cal. App. 4th 819, 839 (2001) ("To reward only the pursuit of a successful theory in cases such as this undercompensates the inevitable exploratory phases of litigation, and may also invite overly conservative tactics or even prohibit some high-risk but deserving actions entirely." (internal quotation marks omitted)). As for the fees incurred in litigating the instant fee motion, it is well-settled that "[a] prevailing party may recover attorney's fees incurred in litigating an entitlement to a fee award." *Baer v. Tedder*, 115 Cal. App. 5th 1139, 1157 (2025).

Using the rates counsel charged and hours counsel worked on this case yields a loadstar figure of $836,300.82. Defendants, however, request a market adjustment to bring the partner hourly rate to $550.00 per hour, which would increase the fee award by $309,355.27. (Mot. 22–23.) In considering whether to adjust the loadstar figure,

courts consider several factors including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). "The purpose of such adjustment is to fix a fee at the fair market value for the particular action." *Id.*

An upward market adjustment is not warranted here. Defendants offer evidence that the rates actually charged by counsel fall below the market rates charged in Los Angeles for similar types of cases. (Jardini Decl. ¶¶ 70–79.) While there is authority supporting Defendants' position that the reasonable market value of counsel's services is not limited by the fact that counsel charged below-market rates, *see Nemecek & Cole v. Horn*, 208 Cal. App. 4th 641, 651 (2012), Defendants do not offer evidence supporting their argument that charging the higher market rates would have been reasonable in this particular case. Indeed, Defendants' expert only opines as to the reasonableness of the rates counsel actually charged. (*E.g.*, Jardini Decl. ¶ 73 ("The level of experience of all the involved attorneys supports the rates charged."); *id.* ¶ 79 ("On these objective measures, the rates charged are very reasonable."); *id.* ¶ 100 ("After review of all of the above-referenced documents and circumstances, I believe that the total billed for the services performed was reasonable.").) And often the best evidence of "market rates" are the rates actual attorneys charged and actual clients agreed to pay. Indeed, the total amount of fees and costs Defendants' expert ultimately recommends awarding Defendants does not include the $309,355.27 market adjustment. (*See id.* ¶ 104.)

The Court agrees with Defendants' expert that the fees Defendants' counsel actually billed are reasonable. While this case involved several interlocking liability theories, the individual legal and factual questions posed were not particularly novel or difficult. And while counsel demonstrated an adept level of skill in defending against Plaintiff's claims and achieved an positive result for their clients, that level skill was not extraordinary in a way that would warrant an adjustment of over $300,000.00. For

example, the Court notes that one of Defendants' lead attorneys went out of his way to tell the jury during closing arguments that this was the first federal jury trial he had tried in his career. (Jan. 9 Trial Tr. 75:6–8, ECF No. 342.) Based on the Court's experience, and without disparaging the quality of counsel's advocacy, it is entirely reasonable for an attorney to bill below average rates for his first federal jury trial. This was also not a case in which counsel took on a high degree of risk by representing Defendants on a contingent fee basis. *See Ketchum*, 24 Cal. 4th at 1132. Quite the opposite: SLS (and later NewRez LLC, its successor-in-interest) already paid $821,900.82 that counsel invoiced for this case. (Cahill Decl. ¶¶ 18, 23.)

On balance, a market adjustment is not warranted, and the actual rates charged by counsel reflect the reasonable rates for this particular case. *See Syers Props. III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 702 (2014) ("Our deference here to the trial court's exercise of its discretion in setting a reasonable attorney fee suggests that had the court determined that the *actual* rate charged was the reasonable rate for the type of services rendered, we would similarly find the court acted within the scope of its discretion.").

The Court awards Defendants the loadstar figure of $836,300.82 in fees.

### D.     Whether Defendants' Costs Are Reasonable

Finally, Defendants seek $140,644.55 in costs, consisting of $10,260.67 in costs incurred by The Ryan Firm, $100,329.88 in costs incurred by Klinedinst PC, $700.00 in costs incurred in conjunction with the fee motion, and $30,900.00 in expert costs incurred in conjunction with the fee motion. (Mot. 23–24; Cahill Decl. ¶ 36.)

Plaintiff only challenges the expert costs incurred in conjunction with the fee motion. (Opp'n 14.) "[U]nder a contractual fee provision, expert expenses are not necessarily recoverable where the agreement merely mentions 'fees' and 'costs.'" *Applied Med. Dist. Corp. v. Jarrells*, 100 Cal. App. 5th 556, 583 (2024) (internal quotation marks omitted); *see also Ripley v. Pappadopoulos*, 23 Cal. App. 4th 1616, 1619 (1994) (expert witness expenses not recoverable costs where parties' written

agreement authorized prevailing party on contract action to recover "attorney fees and costs").

The Settlement Agreement does not allow Defendants to recover their expert witness costs. It merely provides that a "prevailing party in any action seeking to enforce this Agreement shall be entitled to their *attorneys' fees and costs* in that enforcement action." (Cahill Decl. Ex. 10 § 3(A) (emphasis added).) The phrase "attorney's fees and costs" is plainly insufficient to entitle Defendants to expert expenses. *See Ripley*, 23 Cal. App. 4th at 1619.

The Deed of Trust, on the other hand, entitles the lender to "do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument," including, but not limited to, "paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument." (Cahill Decl Ex. 9 § 9.) The language entitling Defendants to "do and pay for whatever is reasonable or appropriate" to protect their interest in the property is substantially broader than the Settlement Agreement's language entitling a prevailing party to recover "attorney's fees and costs." When "sophisticated parties knowingly and intentionally negotiate a broader standard [as to what is recoverable] into their contract . . . the intent of the parties should be upheld by the court." *Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC*, 185 Cal. App. 4th 1050, 1066 (2010). Plaintiff agreed to a contract in which he broadly obligated himself to pay for anything Defendants "do or pay for" in order to enforce their rights under the Deed of Trust, so long as it is "reasonable or appropriate." (Cahill Decl. Ex. 9 § 9.) The Court must respect the parties' decision to include such a broad standard in the Deed of Trust and therefore will award Defendants the expert fees incurred in defending against Plaintiff's claims, including those incurred in connection with the instant fee motion.

The Court awards Defendants the full amount of requested costs, $140,644.55.

///

15

## III.    CONCLUSION

The motion is granted in substantial part. The Court awards Defendants $836,300.82 in attorneys' fees and $140,644.55 in costs. The Court directs the Clerk to enter judgment consistent with this Order.

**IT IS SO ORDERED.**

Dated: May 28, 2026

_Mark C. Scarsi_

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE